UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDA GERSIC,

        Plaintiff,

v.                             Case No:  2:16-cv-631-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff Linda Gersic appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB"). For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

## I.    Issues on Appeal

Plaintiff raises two issues on appeal:[1] (1) whether substantial evidence supports the determination of the Administrative Law Judge ("ALJ") concerning Plaintiff's residual functional capacity ("RFC") with respect to her (a) need for a hand-held assistive device, (b) chronic pain, (c) obesity, (d) mental impairment and (e)

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

allergy impairment; and (2) whether there is sufficient evidence of bias by the ALJ to warrant remand.

## II.    Procedural History and Summary of the ALJ's Decision

Plaintiff filed an application for DIB [2] on September 5, 2011.   Tr. 133. Plaintiff's application alleges disability beginning on June 30, 2008, the same date as her date last insured, due to ankle injury, knee injury, neck injury, dyslexia, anxiety and manic depressive disorder.   Tr. 133, 180.   The Social Security Administration denied the claim initially on October 20, 2011 and upon reconsideration on November 29, 2011.   Tr. 95-99, 105-10.   Plaintiff then requested a hearing before an ALJ, and she received a hearing before ALJ Larry J. Butler on August 7, 2013, during which she was represented by an attorney.   Tr. 31-58, 111-12.   Plaintiff testified at the hearing.   *See* Tr. 33-58.

On November 12, 2014, the ALJ issued a decision finding Plaintiff was not disabled from June 30, 2008, the alleged onset date, through June 30, 2008, the date last insured, and denying her claim.   Tr. 14-25.   The ALJ first discussed in detail Plaintiff's motion for recusal, denied the motion and declined to withdraw.   Tr. 14-17.   Next, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act on June 30, 2008.   Tr. 19.   At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from June 30, 2008 through

---

[2] Plaintiff also filed an application for Supplemental Security Income ("SSI") on September 23, 2011 (Tr. 141-46), but she does not appear to have appealed any determination concerning her SSI application to the Commissioner; thus it is not before this Court.   *See generally*, record.

June 30, 2008. *Id.* At step two, the ALJ found Plaintiff had the following severe impairments: status post right ankle fracture with open reduction internal fixation surgery, status post cervical spine fusion, left knee osteoarthritis and tear and allergies. Tr. 19, 22. The ALJ also discussed whether Plaintiff's depression met the definition of a severe impairment and determined it did not. Tr. 19-20. At step three, the ALJ found that through the date last insured, June 30, 2008, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." *Id.*

Taking into account all relevant evidence, the ALJ then determined that through the date last insured, June 30, 2008, Plaintiff had the RFC to perform light work,[3] except that she could "lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. She could frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl and occasionally climb ladders, ropes, or scaffolds." Tr. 20, 24.

---

[3] The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

The ALJ concluded that through the date of last insured, Plaintiff was capable of performing her past relevant work as an auditor, real estate agent or salesperson, none of which required performance of work-related activities precluded by Plaintiff's RFC. Tr. 23. Accordingly, the ALJ found Plaintiff was not under a disability from June 30, 2008, the alleged onset date, through June 30, 2008, the date last insured. Tr. 24.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which also considered Plaintiff's allegations of bias. Tr. 1-10. The Appeals Council denied Plaintiff's request for review on June 13, 2016. Tr. 1-7. Accordingly, the ALJ's November 12, 2014 decision is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on August 12, 2016. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 10, 11.

## III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 416.920. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of

impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011)). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner. *Id.* at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black*

*Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV.    **Discussion**

   A.    *Whether substantial evidence supports the determination of the ALJ concerning Plaintiff's RFC*

Plaintiff's sole substantive issue on appeal concerns whether the ALJ's RFC finding is supported by substantial evidence. *See generally* Doc. 16. Specifically, Plaintiff alleges the ALJ erred by failing to account for her limitations arising from her need for a hand-held assistive device ("HHAD"), chronic pain, obesity, mental

impairments and severe allergies. Docs. 16 at 15-25, 20 at 3-7. The Commissioner responds that as of the date Plaintiff was last insured, June 30, 2008, Plaintiff did not provide time-relevant evidence to support her disability, and substantial evidence supports the ALJ's decision. Doc. 17 at 9.

In DIB cases such as the case under review here, a claimant must show she was disabled before the expiration of her insured status, which here is June 30, 2008, the same date as Plaintiff alleges her disability began. *See* 42 § U.S.C. §§ 416, 423; Tr. 14; *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005) ("For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she [was] insured.") (citing 42 U.S.C. § 423(a)(1)(A); *Ware v. Schweiker,* 651 F.2d 408, 411 (5th Cir. 1981)); *see also, Jenkins v. Comm'r of Soc. Sec.*, No. 6:14-cv-377-Orl-41DAB, 2015 WL 413112, at *13 (M.D. Fla. Jan. 30, 2015) ("To be eligible for DIB, a claimant must show that he became disabled prior to the expiration of his insured status.") "In order to be entitled to disability benefits, [a claimant] must have applied for benefits while disabled or no later than twelve months after the month in which [her] period of disability ended." *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). *See* 20 C.F.R. §§ 404.315(a)(3), 404.320(b)(3), 404.621(d). *See also* 20 C.F.R. §404.320(a) ("A period of disability is a continuous period of time during which you are disabled.")

Although here the alleged onset date and date last insured are the same, the Court does not take the narrow view the Commissioner appears to urge, that the sole date to consider is June 30, 2008; and if Plaintiff did not provide any records for that

date or there was no traumatic event that occurred on that date, she cannot prove she was disabled. Doc. 17 at 1. Nor did the ALJ do so in this case. As noted, Plaintiff's date last insured is June 30, 2008. Tr. 19. She applied for disability on September 5, 2011. Tr. 133. Accordingly, she would need to show she was disabled *as of* her insured status date *and continuously* through September 5, 2011. *See Wilson*, 284 F.3d at 1226. The ALJ properly considered whether the record supported that Plaintiff was disabled as of her date last insured, and determined she was not. Tr. 17-25.

The RFC refers to the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a). The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, and medical source statements. *Id.* At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The determination of RFC is within the authority of the ALJ, and the claimant's age, education, and work experience is considered in determining the claimant's RFC and whether she can return to her past relevant work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a claimant's remaining ability to do work despite her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).

Here, the ALJ discussed Plaintiff's testimony, reports and medical records, and determined that during the period at issue, there was "insufficient medical evidence in the record to establish that [Plaintiff's] impairments were severe enough to prevent her from performing substantial gainful activity." Tr. 22. With respect to the relevant time period, the ALJ stated:

> The undersigned notes that there is considerable evidence showing that [Plaintiff] received treatment for her impairments after the expiration date of her date last insured, which was June 30, 2008. [Plaintiff] alleged that her disability began on the same date as her date last insured for Title II benefits. [Plaintiff] has reported that her medical conditions have worsened since June 30, 2008. However, [Plaintiff] must establish that her impairments reached disabling severity prior to the expiration of her insured status.
>
> . . .
>
> The bulk of the evidence provided is for treatment subsequent to [Plaintiff's] date last insured. [Plaintiff] needed to establish that her impairments reached disabling status prior to the expiration of her insured status, which is not the case.

Id.

The ALJ discussed evidence that Plaintiff fractured her right ankle in February 2008, which required surgery. Tr. 22, 363-64, 392-99. Medical records within one month after Plaintiff's surgery showed that she recovered well, except that she was having some problems with her knee. Tr. 362. In late April 2008, her ankle was doing very well, and she was walking normally. Tr. 22, 361.

Earlier in April 2008, Plaintiff had had cervical spine surgery because of bulging discs in her neck. Tr. 22, 384-88. The medical record from that date indicates that Plaintiff had a history of two previous neck injuries, the first of which

was a diving injury in 1987. Tr. 385. She reported x-rays of her neck were never taken, but Plaintiff did not recall having much neck pain after this injury. *Id.* Six years later in 1993 she was involved in a motor vehicle accident, and Plaintiff recalls having neck pain associated with that accident and, according to x-rays taken at the time, Plaintiff was told she had many bone spurs. *Id.* The record next notes that Plaintiff had not sought treatment since that time until her neck surgery. *Id.* Plaintiff also recovered well from this surgery and had no complaints about her neck until March 2010, when she slipped on wet tile and hit her neck on the windowsill. Tr. 22, 406-09.[4]

With respect to Plaintiff's knee impairments, evidence in August 2008 showed that Plaintiff had good range of motion in her left knee, no evidence of joint effusion and no complaints of pain. Tr. 22, 361. The ALJ noted that there is no evidence during that time period that Plaintiff needed a cane or wheelchair for ambulation after she healed from her surgeries, and in April 2008 she was reported to be walking normally. Tr. 22, 361. With respect to Plaintiff's allergies, the ALJ noted that while the record shows she was treated for her allergies, Plaintiff's symptoms appeared to have been well controlled with treatment. Tr. 23, 332-59.

In terms of Plaintiff's alleged mental impairments, the ALJ determined at step two that Plaintiff's depression was not a severe impairment, as there are no records

---

[4] Notably, this record also reports that postoperatively, Plaintiff stated "she was doing wonderfully." Tr. 406. The physician, Wesley Faunce, Ph.D., M.D., stated he last saw her in August 2008, and "[s]he was in her usual state of health until Wednesday night" when she slipped and fell on her neck. *Id.*

of any alleged mental health treatment prior to Plaintiff's date last insured and no evidence that prior to June 2008 Plaintiff's alleged mental impairments produced more than a minimal effect on her ability to perform basic work activities. Tr. 19-20. The ALJ also found that Plaintiff's alleged mental impairments caused no limitation in her activities of daily living, social functioning or concentration, persistence or pace. Tr. 20. Although she appears only to be challenging the ALJ's RFC decision (Doc. 16 at 2, 15), the Court also will address whether substantial evidence supported the ALJ's step two decision with respect to Plaintiff's mental impairments, as that issue briefly was raised by Plaintiff. Doc. 16 at 21.

### 1. Hand-held assistive device.

Plaintiff first argues that the ALJ erred by failing to consider in his RFC assessment and make an explicit determination whether Plaintiff required a HHAD. Docs. 16 at 15-17, 20 at 3-5. Following Plaintiff's ankle surgery on February 24, 2008, Plaintiff visited her surgeon, Donn Owen Fuller, M.D., on March 6, 2008. Tr. 362-64. Dr. Fuller removed the splint and staples and fit Plaintiff with a Bledsoe boot for support. Tr. 362. In that visit, Dr. Fuller also noted Plaintiff's continued problems with her left knee and that Plaintiff had undergone an MRI. *Id.* He recommended Plaintiff return for a follow-up visit in one month, during which time Dr. Fuller would review Plaintiff's MRI and order an x-ray of her right ankle upon return. *Id.* On March 31, 2008, Plaintiff returned for her follow-up visit. *Id.* Dr. Fuller reported that five weeks after surgery Plaintiff was doing "quite well." *Id.* He also discussed the findings from Plaintiff's MRI of her left knee, taken on February

2, 2008, which showed that Plaintiff previously had lateral patellar retinacular release surgery. *Id.* The physician recommended physical therapy for Plaintiff's knee and right ankle. *Id.* Plaintiff returned to Dr. Fuller on April 28, 2008 for a recheck of her right ankle fracture. Tr. 361. Dr. Fuller reported that Plaintiff was "doing very well in regards to the ankle. She has no complaints of pain. She is normally ambulatory." *Id.* He further observed that Plaintiff had cervical spine surgery ten days earlier and was recovering from it. *Id.* Finally, he stated that Plaintiff would like to have her knee surgery for her lateral meniscal tear, perhaps in July, and he would see her back at that time. *Id.* Plaintiff returned to see Dr. Fuller on August 28, 2008, during which her examination revealed good range of motion, no evidence of knee joint effusion and "really no complaints of pain." *Id.* Dr. Fuller observed Plaintiff did have some "slight crepitation" in her knee joint, but it was not bothering her at that time. *Id.* Plaintiff asked if she should proceed with surgery, even though she was not having pain, and Dr. Fuller suggested she hold off as long as she was not in any discomfort. *Id.*

There are no notations in Dr. Fuller's records of Plaintiff's use of a cane, crutches or wheelchair, although Plaintiff testified that Dr. Fuller prescribed her a cane when she broke her ankle, and she has continued its use since then. Tr. 39. A third-party function report completed by Plaintiff's daughter in October 2011 also noted Plaintiff's use of a cane. Tr. 198. Otherwise, Plaintiff's use of a cane was reported by Lee Mental Health Center in September and October 2012 (Tr. 436, 440, 445) and in a visit to Michele Candelore, D.O., in November 2012 for follow-up for her

hypertension and depression, during which the physician noted Plaintiff's gait was unsteady and her mobility was limited.  Tr. 461.

Social Security Ruling ("SSR") 96-9p states that to determine if an assistive device is medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  Other than Plaintiff's 2013 hearing testimony that she was prescribed a cane after she broke her ankle in 2008 and medical records in 2012 and 2013 that she still was using the cane, there is no medical documentation establishing a need for a hand-held assistive device as of the date last insured.  Indeed, as noted by the ALJ and summarized in his opinion, a short time after her ankle surgery Plaintiff's surgeon reported she was doing well; and as of April 2008, she reported no complaints of pain and was normally ambulatory.  Tr. 22, 361.  Plaintiff's August 2013 hearing testimony and records from 2012 and 2013 that she still was using a cane are not time-relevant to whether she was disabled in June 2008.  Substantial evidence supports the ALJ's failure to include this limitation in Plaintiff's RFC.

## 2. Chronic pain.

Plaintiff argues the ALJ applied incorrect legal standards when he evaluated Plaintiff's complaints of pain.  Docs. 16 at 17 (citing 20 C.F.R. § 404.1529(c) and SSR 96-7P), 20 at 5-6.  Accordingly, Plaintiff asserts the ALJ's credibility assessment is

not supported by substantial evidence.

When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged. *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson*, 284 F.3d at 1225-26; *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This so-called pain standard "is fully consistent with the Secretary's regulations." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991). The Eleventh Circuit has long recognized that "credibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212 (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."

*Wilson*, 284 F.3d at 1225 (internal citations omitted).

With respect to Plaintiff's subjective complaints, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. The objective medical findings contained in [Plaintiff's] medical records simply do not support a finding of severe symptoms as she alleged. While [Plaintiff's] impairments are documented in her medical records, the severity required to necessitate a finding of disability is not present. [Plaintiff's] subjective allegations are contradicted by the objective findings.

Tr. 21-22. As noted, the ALJ discussed that while there is "considerable evidence" showing Plaintiff received treatment for her impairments after her insured status expired, there was insufficient medical evidence that her impairments were of a severity to preclude her from performing substantial gainful activity prior to that time. Tr. 22.

Based on the Court's review of the record and the reasoning of the ALJ, the undersigned finds the ALJ considered the relevant evidence and Plaintiff's testimony regarding the effects of her alleged symptoms on her activities and provided adequate reasons for discrediting her testimony. Tr. 21-23. The ALJ acknowledged Plaintiff's testimony that her medical conditions had worsened since June 30, 2008. Tr. 22. He noted, however, that Plaintiff must "establish that her impairments reached disabling severity prior to the expiration of her insured status." *Id.* The ALJ continued, "[d]uring the period at issue, there is insufficient medical evidence in the record to establish that [Plaintiff's] impairments were severe enough to prevent her from performing substantial gainful activity." *Id.* The ALJ discussed that his

opinion is consistent with that of the agency consultant, Reuben Brigety, M.D, who opined that Plaintiff could perform light exertional level work with some limitations, and accorded it great weight. *Id.* Plaintiff did not challenge this determination. "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. Here, the Court finds that the ALJ clearly articulated the reasons for his credibility findings.

### 3. Obesity

Plaintiff next argues the ALJ erred by failing to consider Plaintiff's medically determinable impairment of obesity. Docs. 16 at 20-21, 20 at 6. As an initial matter, the Court notes that Plaintiff herself did not allege her obesity as an impairment or provide evidence that her weight was a medically determinable impairment. Tr. 180. Nor is there a diagnosis in the record of obesity [5] or treatment notes that indicate Plaintiff's weight caused work-related functional limitations or significantly limited her daily activities. Most of the records cited by Plaintiff and other medical records she did not cite indicate Plaintiff's weight or, in limited cases, also her BMI, but include no recommendation or treatment advice concerning her weight. [6] *See, e.g.*, Tr. 365, 394, 396, 411, 417-20. In one record dated September 23, 2010 in which Plaintiff visited Dr. Candelore complaining of

---

[5] Indeed, the Court did not locate anywhere in the entire record in which the word "obesity" even was used. There are records from July and October 2013 in which Plaintiff was diagnosed as "overweight" or counselled to lose weight, but these records are not time relevant here. Tr. 490, 495; *see generally*, record.

[6] The Court also notes some of the records cited by Plaintiff did not contain any weight information. *See, e.g.*, Tr. 369, 397, 399 (*cited in* Doc. 16 at 20).

insomnia, Dr. Candelore noted that Plaintiff's treatment for insomnia and anxiety hopefully would "give her more energy to get more exercise. . . ." Tr. 413. First, that is not close to a diagnosis or even a recommendation; second, it is not time-relevant to Plaintiff's period of disability. In addition, the Court located records from Lee Mental Health from September 2012 and later in which Plaintiff was recommended to eat a balanced diet low in fats and referred to her primary care physician for weight management and nutritional concerns (Tr. 435, 444, 449, 487), but, again, these records are not time-relevant.

Contrary to Plaintiff's assertion that the ALJ has the burden to determine whether Plaintiff's obesity affects her ability to perform basic work activities, this instead is Plaintiff's burden. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."). SSR 02-1p describes how obesity is considered during the evaluation process. Adjudicators are reminded that the combined effects of obesity with other impairments can be greater than the effects of each medical impairment considered separately. SSR 02-1p, 2002 WL 34686281, at *1. Specifically, the ruling notes that obesity can cause functional limitations. *Id.* at *3.

> The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose

(fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

. . . .

RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Id.* at 6. The ruling provides that each case will be evaluated "based on the information in the case record." *Id.*

Here, Plaintiff did not meet her burden. First, the ALJ did not need to consider Plaintiff's obesity because Plaintiff did not identify obesity as an impairment on her paperwork or during the hearing. Tr. 31-58, 180; *see East v. Barnhart*, 197 F. App'x 899, 902 (11th Cir. 2012) ("Although the ALJ must consider all the impairments the claimant alleges in determining whether the claimant is disabled, the ALJ need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant."). During the hearing, Plaintiff did not establish or discuss at all how obesity impaired her functioning. *See* Tr. 31-58. The record simply does not support Plaintiff's contention that her weight was a medically determinable impairment, and the ALJ did not err in failing to include it in her RFC.

### 4. Mental impairments

Plaintiff next claims the ALJ erred by failing to find Plaintiff's psychological impairments to be severe and also by failing to incorporate any mental limitations in his RFC finding. Docs. 16 at 21-24, 20 at 6-7. First, the Court will address the severity argument.

At the second step in the sequential evaluation process, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines a claimant has a severe impairment, as here, the analysis moves to step three. *See* 20 C.F.R. § 404.1520(a)(4). This circuit holds that the ALJ's finding "of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). This is because after proceeding beyond step two of the process, the ALJ must consider all of the claimant's impairments taken as a whole when determining whether her impairments qualify as a disability (step three) and whether she can return to her past work (step four) or, if not, whether she can perform other work available in the national economy (step five). *Id.*, *see* 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of establishing that her impairments are severe and prevent the performance of her past relevant work. *Bowen v. Yuckert*, 482 U.S. 146 at 146 n.5 (1987). A severe impairment is an impairment or combination of impairments that significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Here, as noted above, the ALJ determined at step two that Plaintiff suffered from at least one severe impairment. Tr. 19. Specifically, he found Plaintiff had severe impairments of status post right ankle fracture with open reduction internal fixation surgery, status post cervical spine fusion, left knee osteoarthritis and tear and allergies. *Id.* In his step two discussion, the ALJ specifically addressed Plaintiff's records concerning her mental impairment of depression, including those of Dr. Candelore. Tr. 19-20.

As with Plaintiff's alleged impairment of obesity, the record is devoid of any treatment records for Plaintiff's alleged mental impairments during the relevant time period. The ALJ addressed the November 20, 2012 letter from Plaintiff's primary care physician, Dr. Candelore, opining that Plaintiff had suffered from severe depression the entire eight years she had treated Plaintiff (Tr. 429), and went on to perform a psychiatric review technique, stating:

> [Plaintiff] reported depression as a diagnosis and Michele Candelore, D.O., provided a letter stating that [Plaintiff] has had severe depression since 2008, but there are no records regarding any alleged mental health treatment prior to her date last insured, which is June 30, 2008 (Ex. 6F). Dr. Candelore's assessment is given little weight because there are no treatment progress notes to document [Plaintiff's] symptoms or responsiveness to treatment. Dr. Candelore did not provide any specific mental functional limitations or a precise date to establish when [Plaintiff] was diagnosed with depression (Ex. 6F). Dr. Candelore mentioned that [Plaintiff] has been Baker Acted, but the evidence of record only shows a recent hospitalization that occurred well after June 2008 (Ex. 7F, 11F).

Tr. 19-20. The ALJ also considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and found

> [t]here is no evidence that prior to June 2008, [Plaintiff's] alleged mental impairments produced more than a minimal effect on her ability to

perform basic work activities. [Plaintiff's] alleged mental impairments caused no limitation in her activities of daily living, no limitation in her social functioning, and no limitation with her concentration, persistence, or pace because there is no evidence available to show that [Plaintiff's] mental functioning was limited in any way.

Tr. 20. Thus, the ALJ determined Plaintiff's mental impairments are nonsevere. *Id.*

The undersigned has reviewed the record and concludes that substantial evidence supports the ALJ's decision not to include Plaintiff's mental impairments as severe impairments. The ALJ's decision also is consistent with the state agency examiners, who likewise found Plaintiff's anxiety disorders to be nonsevere and insufficient evidence that such disorders affected any of the four broad functional areas. Tr. 69-70, 79-80. Furthermore, there was no error in the ALJ doing so because the ALJ found other severe impairments and proceeded with the sequential evaluation process. *See Burgin v. Comm'r of Soc. Sec.*, 429 F. App'x 901, 902 (11th Cir. 2011).

Likewise, substantial evidence supports the ALJ's RFC assessment as to Plaintiff's mental impairments. As noted, the record contained no mental health treatment records prior to Plaintiff's date last insured. A review of the relevant records do indicate that Plaintiff reported to her physicians treating her for her physical impairments a history of hypertension and depression. For example, in February 2008, Dr. Fuller noted Plaintiff's history of "essential hypertension and depression" and that she was taking Effexor, a medication used to treat depression.

Tr. 365, Doc. 16 at 3 n.2. She still was taking this medication[7] on April 17, 2008, when she went in for her cervical spine surgery. Tr. 384-85, 387-88. As noted by the Commissioner, Plaintiff's next record of any treatment for her mental health was on October 5, 2009, over a year after her date last insured, when Plaintiff's primary care physician, Dr. Candelore, added Lexapro to Plaintiff's regime for her depression. Doc. 17 at 15; Tr. 419. Plaintiff's summary of her medical history is consistent with this fact. *See* Doc. 16 at 3-4. Other records discussing Plaintiff's mental impairments are well past Plaintiff's date last insured. *See id.* at 4-6 (summarizing records). Notably, none of the time-relevant records contain even a diagnosis of depression; they simply note the history. None is from a mental health professional.

The RFC assessment is based on *relevant evidence* of an individual's remaining ability to do work despite her impairments. *Phillips*, 357 F.3d at 1238. Because there is little to no relevant evidence that Plaintiff's mental impairments affect her ability to work, the ALJ did not commit error by failing to include them in his RFC assessment. Moreover, the ALJ considered, but gave little weight, to the opinion of Dr. Candelore finding it was not consistent with the medical evidence of record. Tr. 20.

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent

_____

[7] Plaintiff correctly indicates that this record also notes she was taking Amitriptyline, and seems to suggest it was for depression, citing it as one of its treatment uses. Doc. 16 at 3 n.1. The record itself, however, states she was taking this medication for her insomnia, and that she was taking the Effexor for perimenopausal symptoms. Tr. 385. Moreover, the record further indicates Plaintiff's past medical history was "significant for hypertension and insomnia," but makes no mention of a history of depression. *See id.*

thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips*, 357 F.3d at 1240); *Lewis*, 125 F.3d at 1440; *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

Here, as acknowledged by Plaintiff, there is limited evidence in the record of psychological treatment before Plaintiff's date last insured, June 30, 2008. Doc. 16

at 22-23. Plaintiff asserts that Dr. Candelore's 2012 opinion "contemplates her relationship with Plaintiff for the prior eight years, thus encompassing the relevant period at issue during 2008." *Id.* at 23. This might be so if there were supporting records of Dr. Candelore during that time period, which, as noted, there is not. Moreover, as the ALJ noted, neither Dr. Candelore nor Plaintiff advanced any specific mental functional limitations because of her depression or how they affected her basic work activities. Tr. 19-20. The Court finds that the ALJ provided good cause for discounting the opinion of Dr. Candelore, and thus substantial evidence supports his decision to exclude any such mental limitations in his RFC assessment. *See Winschel,* 631 F.3d at 1179.

As noted, the limited relevant records that indicate Plaintiff's self-reported history of depression or a diagnosis of depression are insufficient to show this condition affected Plaintiff's work activities. *Moore,* 405 F.3d at 1213 n.6. Plaintiff also asserts the ALJ erred by failing to identify Plaintiff's mental limitations as "medically determinable." Docs. 16 at 23, 20 at 6-7. The ALJ did not make such a finding, as noted by the Commissioner. Doc. 17 at 16 n.6. Instead, he found they were not severe, which the Court already has found was not in error.

### 5. Allergies

Finally, Plaintiff argues that although he found Plaintiff's allergies to be severe at step two, he erred by failing to include any corresponding limitations for them in his RFC assessment. Docs. 16 at 24-25, 20 at 7. The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's allergy symptoms

were well controlled with treatment and any error at step two is harmless.   Doc. 17 at 19-20.   The Court agrees.

The ALJ discussed Plaintiff's allergies in his RFC assessment.   Tr. 23. Plaintiff's records of allergy treatment from 2005 and 2006 – the only such records of allergy treatment in the record – indicate that Plaintiff experienced food and medication allergies.   Tr. 335-59.   In addition to noting that Plaintiff's symptoms appeared to be well controlled with treatment, the ALJ held that her medical records "simply do not support a finding that she had significant functional limitations that rendered her unable to perform basic work activities prior to June 30, 2008."   Tr. 23. Clearly, the ALJ considered Plaintiff's allergies in assessing her RFC.   *Id.*   Plaintiff has not presented any evidence that they affected her basic work activities; thus the ALJ's RFC determination is supported by substantial evidence.

> B.   *Whether there is sufficient evidence of bias by the ALJ to warrant remand*

The Social Security Act requires that a claimant's hearing is both full and fair. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam).   The ALJ, of course, plays a "crucial role in the disability review process" and has a duty to "develop a full and fair record" and to "carefully weigh the evidence, giving individualized consideration to each claim."   *Id.* at 1401.   Accordingly, the ALJ must "not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision."   *Id.* at 1400 (quoting 20 C.F.R. § 404.040).   A claimant who fears that a particular ALJ will not provide a fair hearing must notify the ALJ at the "earliest opportunity."   20 C.F.R. § 404.940.   If

the ALJ declines to withdraw, the claimant may seek reconsideration by raising the issue before the Appeals Council. *Id.* In this case, Plaintiff did both these things, and her request was denied both by the ALJ and the Appeals Council. Tr. 2, 14-17.

A court begins with the presumption that the administrative law judge is unbiased, which "can be rebutted by a showing of conflict of interest or some other *specific reason for disqualification.*" *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982) (emphasis added); *see also Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 875 (11th Cir. 2011) (affirming determination of no bias in part because the claimant failed to establish specific instances of bias in her case). Generalized assumptions of possible conflict or interest are insufficient. *Schweiker*, 456 U.S. at 196.

The Court has reviewed the decision of the ALJ in this case, who addressed this issue in considerable detail (Tr. 14-17), the determination of the Appeals Council (Tr. 2) and Plaintiff's and the Commissioner's arguments and the cases cited therein, and finds no evidence of bias in this case or that the separate pending litigation that indirectly involved Plaintiff's counsel influenced ALJ Butler's decision in this case.[8] *See* 20 C.F.R. §§ 404.940, 416.1440; Docs. 16 at 14, 17 at 6-9, 20 at 1-3. Indeed,

---

[8] The cases cited by Plaintiff are inapposite, as in those cases the Court reversed ALJ Butler's decisions because substantial evidence did not support his decisions, not because of his actual bias against the plaintiffs. Docs. 16 at 9-10 (citing, among other cases, *King v. Comm'r of Soc. Sec.*, No. 2:14-cv-341-FtM-CM, 2015 WL 5234318, at *9 (M.D. Fla. Sept. 8, 2015); *Hill v. Comm'r of Soc. Sec.*, No. 2:14-cv-708-FtM-CM, 2016 WL 1253579, at *10 (M.D. Fla. Mar. 31, 2016)), 20 at 1-3. Only after finding remand appropriate on other grounds, the undersigned directed the Commissioner to re-assign these cases for rehearing before a different ALJ in order to avoid any appearance or risk of actual bias or prejudgment. *Hill*, 2016 WL 1253579, at *10; *McCann v. Comm'r of Soc. Sec.*, No. 2:14-cv-265-FtM-CM, 2016 WL 1253576, at *11 (M.D. Fla. Mar. 31, 2016); *Segui v. Comm'r of Soc. Sec.*, No. 2:15-cv-399-FtM-CM, 2016 WL 5443673, at *8 (M.D. Fla. Sept. 29, 2016).

Plaintiff has not cited to the record where such bias or prejudice *against this Plaintiff* is evident, and the Court already has found that the ALJ applied the proper legal standards and his decision is supported by substantial evidence. Accordingly, the Court does not find any error in the ALJ failing to withdraw from hearing this case.

V. **Conclusion**

The undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff was not disabled from June 30, 2008, the alleged onset date, through June 30, 2008, the date last insured, is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 28th day of August, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record